**Sarah B. SHIELDS, Individually and as representative of all others similarly situated, Plaintiff–Appellant,**

v.

**CITYTRUST BANCORP, INC., George F. Taylor and Irwin Engelman, Defendants–Appellees.**

No. 802, Docket 93–7738.

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1994.

Decided June 2, 1994.

Mark C. Rifkin, Haverford, PA (Greenfield & Rifkin, Haverford, PA, Goodkind Labaton Rudoff & Sucharow, New York City, Gordon & Hiller, Bridgeport, CT, of counsel) for plaintiff-appellant.

Philip L. Graham, Jr., New York City (Theodore W. Rosen, Sullivan & Cromwell, New York City, of counsel) for defendants-appellees.

Before: NEWMAN, Chief Judge, WINTER and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

As the aggrieved holder of somewhat less than one share of stock in Citytrust Bancorp, Inc. ("Citytrust"), Sarah B. Shields brought this class action claiming that Citytrust and two of its senior executives concealed and misrepresented Citytrust's financial condition—in particular, facts concerning its loan portfolio and loan loss reserves—in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b); Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5; and New York law on negligent misrepresentation. The senior executives named in the complaint, George F. Taylor and Irwin Engelman, were also sued as "controlling persons" under Section 20 of the 1934 Act. 15 U.S.C. § 78t(a). Defendants signed a stipulation, so ordered by the district court, certifying the class and designating Shields as class representative. Thereafter, Citytrust and co-defendants Taylor and Engelman moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, alternatively, pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity. On June 18, 1993, the United States District Court for the District of Connecticut (Eginton, *J.*) found that the Complaint failed to satisfy the pleading requirements of Rule 9(b) and dismissed. We affirm.

## BACKGROUND

### A. *Shields's Allegations*

We must accept as true all facts alleged in the Second Amended Complaint dismissed by the district court. *See Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). At all relevant times, Citytrust was a bank holding company organized under the laws of Connecticut. Citytrust's principal asset was Citytrust Bank, Connecticut's third largest commercial bank on the basis of total assets. Taylor was

chairman of the board and chief executive officer of Citytrust and the Bank. Engelman was a director, president and chief operating officer of Citytrust and the Bank.

Between 1984 and 1988, Citytrust's reported assets rose from $1.5 billion to $2.6 billion, and its reported net income increased sixty percent. In July 1988, Citytrust announced that it expected to realize record earnings for the eleventh consecutive year, and voted a twenty cent quarterly dividend. Shields alleges that Taylor, at that time, falsely and unjustifiably stated that Citytrust's loan portfolio was "extremely healthy, as evidenced by net charge-offs of approximately ¼ of 1 percent of loans over the past four years," a rate "well below the average for our industry." In October 1988, Citytrust reported a 10% increase in earnings and voted another twenty cent quarterly dividend. In January 1989, Citytrust reported that it had achieved its eleventh consecutive year of record net income as expected, which Taylor called "a solid performance," and had voted yet another twenty cent dividend for the quarter.

Shields alleged that Citytrust's financial health was deteriorating throughout this period largely because, in respect of a number of loans in its portfolio, Citytrust had accepted a right to share in equity appreciation in lieu of its usual collateral. As a result of such "shared appreciation loans," Citytrust was critically vulnerable to any drop in real estate values. Shields alleged that this risk was intentionally concealed by the defendants. In April 1989, Citytrust announced another increase in net income and Taylor stated that "prospects appear bright for further gains in earnings and returns on assets and equity. Our plan calls for 1989 to be our 12th consecutive year of record earnings."

Two months later, however, on June 15, 1989, Citytrust announced that, following an "intensive review" of its loan portfolios, it was necessary to take a $40 million charge against earnings in order to increase its loan loss reserves. Citytrust also stated that this charge would result in its reporting a loss in the second quarter of 1989, as well as for the entire 1989 fiscal year. Furthermore, Citytrust projected non-performing loans of up to

$130 million for the second quarter of 1989 (up from $96 million in the first quarter) and noted that the amount could further increase in the second half of 1989.

The day after the June 15 announcement, Citytrust's stock dropped from $40–⅝ per share to $34–⅞, despite Taylor's declaration "that the second half of 1989 will be profitable for Citytrust because of a strong performance from the rest of our businesses and the continued underlying strength of the Company's earnings." Although Citytrust reported a net loss for the second quarter of 1989, Taylor allegedly continued his effort to mislead the investing public by stating: "While we are concerned with the extent of our loan problems, it is important to note that the underlying earnings of the bank remain strong." He also made the alleged misrepresentation that "[t]he addition to reserves is a prudent and conservative action in view of current negative real estate market conditions. We have assessed the underlying value of the bank's real estate related assets and provided for both the current exposure and potential for further decline in value."

The first of the two plaintiff sub-classes certified by the district court is composed of purchasers of Citytrust common stock in the period between March 31, 1989 and June 16, 1989 during which the events just described took place. The second plaintiff sub-class is composed of such purchasers in the period between June 17, 1989 and December 20, 1989, the date on which Citytrust announced further unnerving developments, including the elimination of its dividend for 1990. We recount the highlights of the second sub-class period, as alleged by Shields, in the following paragraphs.

Citytrust issued a news release on August 9, 1989, in which it claimed to be "moving aggressively" to overcome its problems, in part by making a "forceful drive to expand market share." Taylor again asserted that "the underlying earnings of the bank remain firm" and claimed that Citytrust was "committed to delivering solid earnings in the third and fourth quarters despite the pressure from our non-performing loans." On August 10, 1989, Citytrust filed a Form 10–Q that stated "management believes the cur-

rent level of the allowance is adequate to provide for both the current loss exposure and the potential for a further decline in value." On October 18, 1989, Citytrust declared a quarterly dividend of twenty-eight cents per share, allegedly to create an illusion of renewed financial health.

Two months later, on December 20, 1989, Citytrust announced a significant addition to its loan loss reserves, reflecting an increase in non-performing loans, which would cause it to report a considerable loss for the fourth quarter. Citytrust also announced the elimination of its dividend for 1990. During the second sub-class period, the price of Citytrust stock declined from $33 on June 16, 1989 to $11 on December 20, 1989.

### B. *Procedural History*

Shields filed her class action on June 16, 1989, the day after Citytrust's first announcement that it would take a charge against earnings in order to increase its loan loss reserves. Defendants filed their answer on July 11, 1989, pleading as defenses failure to state a claim and failure to plead fraud with the requisite particularity.

In the months that followed, Citytrust permitted Shields to review certain documents relating to her allegations and to interview one of its executives. Shields moved to amend her complaint on February 5, 1990, in the wake of Citytrust's December 20, 1989 announcement of additional loan loss reserves and a resulting substantial quarterly loss. That motion and other issues were the subject of a "Revised Stipulation and Pretrial Order No. 1," entered into by the parties on September 27, 1990, and so ordered by the district court on October 23, 1990. The stipulation and order provided that the case would proceed as a class action, with two sub-classes, both represented by Shields; allowed Shields to serve and file an amended complaint; arranged for the organization of class counsel; and implemented certain housekeeping arrangements.

Shields filed the present Complaint on December 13, 1990, which included allegations relating to Citytrust's December 20 announcement and extended the class period accordingly. On February 15, 1991, Defen-

dants moved to dismiss the Complaint and ten days later filed a motion to stay discovery pending a decision on the motion to dismiss. The district court granted the motion to stay discovery on June 21, 1991.

In August 1991, federal banking regulators declared Citytrust Bank insolvent and appointed the Federal Deposit Insurance Company as receiver. Citytrust succeeded in converting the bankruptcy into a Chapter 11 proceeding in September 1991, and an amended plan of reorganization was confirmed by the bankruptcy court on March 27, 1992. The amended plan had the effect of dissolving the automatic stay imposed by 11 U.S.C. § 362 with respect to the present lawsuit.

On June 18, 1993, the district court ruled that Shields's allegations "do not satisfy the specificity requirements of Fed.R.Civ.P. 9(b) and, thus, fail to state a 10b-5 securities fraud claim under Fed.R.Civ.P. 12(b)(6)," and granted Defendants' motion to dismiss. The district court also dismissed Shields's claims against Taylor and Engelman for secondary liability under Section 20 of the 1934 Act, and declined to exercise supplemental jurisdiction over the asserted state law claim for negligent misrepresentation. Shields filed a timely notice of appeal.

### DISCUSSION

In reviewing a district court's grant of a motion to dismiss, we accept the facts alleged in the Complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993). Generally, we will uphold a district court's dismissal of a claim only if it appears that the plaintiff can prove no set of facts upon which relief may be granted. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When fraud is asserted, however, we must also view the complaint in light of Rule 9(b), which requires that "the circumstances constituting fraud ... be stated with particularity." Fed. R.Civ.P. 9(b). Securities fraud allegations under § 10(b) and Rule 10b–5 are subject to the pleading requirements of Rule 9(b), and a

complaint making such allegations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989)).

Rule 9(b) also provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." However, since Rule 9(b) is intended "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit," *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991) (internal quotes omitted); *see also Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), the relaxation of Rule 9(b)'s specificity requirement for scienter "'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *O'Brien*, 936 F.2d at 676 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)). Therefore, to serve the purposes of Rule 9(b), we require plaintiffs to allege facts that give rise to a strong inference of fraudulent intent. *See Mills*, 12 F.3d at 1176; *O'Brien*, 936 F.2d at 676; *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir.1990).

The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 268–69 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc). We agree with the district court that

Shields has failed to plead facts sufficient to raise a strong inference of fraud, and that the Complaint therefore must be dismissed for failure to meet the specificity requirements of Rule 9(b).

## A. Waiver

Shields argues that compliance with the requirements of Rule 9(b) is not in issue because the defendants waived their right to invoke that rule by answering Shields's original complaint without moving for dismissal on that ground. We see no such waiver. "It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); *see also O & G Carriers, Inc. v. Smith*, 799 F.Supp. 1528, 1534 (S.D.N.Y.1992). Shields relies on *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir.1987), for the proposition that an amended complaint "does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint." However, the defenses and objections that are irrevocably waived by answering an original complaint are those that "involve[ ] the core issue of a party's willingness to submit a dispute to judicial resolution," such as objections to "lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service." *Id.* Defendants' invocation of Rule 9(b), however, is an effort to achieve judicial resolution of the controversy, not to foreclose it. So *Gilmore* does not argue for waiver, particularly since the answer to the original complaint pleaded "failure to plead fraud with particularity" as a defense.

## B. Scienter

Shields contends that defendants acted with scienter in (1) expressing confidence in the adequacy of its reserve for bad loans, (2) failing to disclose the hazards of its shared appreciation loans, and (3) issuing optimistic statements concerning future prospects. In virtually each instance, Shields cites press releases and publicly filed corpo-

rate documents to establish the statements and nondisclosures that she contends are false or reckless. She has thereby satisfied the Rule 9(b) pleading requirements concerning the "time, place, speaker, and sometimes even the content of the alleged misrepresentation." *See Ouaknine,* 897 F.2d at 79. What is lacking from all of Shields's allegations are particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent.

Shields's pleading technique is to couple a factual statement with a conclusory allegation of fraudulent intent. For example, she claims that defendants "knew or were reckless in not knowing" that the loan loss reserve was inadequate; that defendants "intentionally concealed" the vulnerability to real estate losses inherent in shared appreciation loans; that defendants "knew but concealed" the poor condition of Citytrust's loan portfolio; and that defendants "knew or should have known" that Citytrust's loan problems were growing worse and that the loan loss reserve would have to be increased a second time. However, she does not allege facts that would give rise to a strong inference that defendants knew or recklessly disregarded the fact that the loan loss reserve was inadequate, or that continuing erosion of the real estate market would render the loan portfolio precarious, or that the outlook was poor. Shields's frequent conclusory allegations—that Defendants "knew but concealed" some things, or "knew or were reckless in not knowing" other things—do not satisfy the requirements of Rule 9(b). We have held in the context of securities fraud claims that such allegations are "so broad and conclusory as to be meaningless." *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119–20 (2d Cir.1982).

### 1. *Conscious Misconduct or Recklessness.*

Nowhere in her Complaint does Shields adduce the kind of circumstantial evidence that would indicate conscious fraudulent behavior or recklessness. Shields records statements by defendants predicting a prosperous future and holds them up against the backdrop of what actually transpired. In April 1989, for example, Taylor announced that Citytrust was expecting that year to be its twelfth consecutive year of record earnings. Then, two months later, Citytrust announced that it would instead report a loss for 1989 as a result of an increase in its loan loss reserve. Similarly, Shields claims that Citytrust filed a document in August 1989 stating that it believed its loan loss reserve was adequate. Yet the following October it turned out that the reserve was inadequate and that Citytrust would make a significant addition to it. This technique is sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of "alleging fraud by hindsight." *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978).

The facts alleged in the Second Amended Complaint show a dimming of the company's prospects as subsequent reviews were conducted of the company's loan portfolio, and resulting cascades of bad news and dropping stock prices. Shields does not allege that the company's disclosures were incompatible with what the most current reserve reports showed at the time the disclosures were made. The closest she comes is to allege that "[d]efendants knew or were reckless in not knowing ... that Citytrust's reserves for loan losses were completely inadequate in light of the risks which the loan portfolio entailed, and that such reserves would have to be substantially increased" (Second Amended Complaint at ¶ 27); and that "[d]efendant Taylor ... knew or should have known that Citytrust's loan problems had worsened materially and were worsening and that it was highly likely, if not certain, that Citytrust would soon again greatly increase its loan loss reserves" (Second Amended Complaint at ¶ 34). These allegations do not say, however, that the company's disclosures were inconsistent with current data. The pleading strongly suggests that the defendants should have been more alert and more skeptical, but nothing alleged indicates that management was promoting a fraud. People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident

about their stewardship and the prospects of the business that they manage. The district court did not err in concluding that the allegations of the Second Amended Complaint are insufficient to support an inference of fraud.

### 2. *Motive and Opportunity.*

Scienter can also be pleaded by alleging facts that demonstrate both motive and opportunity to commit fraud. Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged. Shields argues that the following allegation supports the inference that Taylor and Engelman had the motive and opportunity to commit fraud:

> The purpose and effect of said scheme was (i) to inflate the price of the common stock of the Company and to conceal the adverse facts concerning the Company's business, liabilities, revenues, earnings, assets, forecasts and future prospects; and (ii) to maintain artificially high market prices for the common stock of Citytrust and to induce plaintiff and the other members of the Class to purchase Citytrust common stock ... at artificially inflated prices so that individual defendants could protect their executive positions and the compensation and prestige they enjoy thereby.

 To allege a motive sufficient to support the inference that optimistic but erroneous statements were fraudulently made, a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold. *See Ferber v. Travelers Corp.,* 785 F.Supp. 1101, 1107 (D.Conn. 1991) (Nevas, *J.*) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States could be subject to fraud allegations."). In looking for a sufficient allegation of motive, we assume that the defendant is acting in his or her informed economic self-interest. *See Atlantic Gypsum Co. v. Lloyds International Corp.,* 753 F.Supp. 505, 514 (S.D.N.Y.1990) (Mukasey, *J.*) ("Plaintiffs' view of the facts defies economic reason, and therefore does not yield a reasonable inference of fraudulent intent."). It is hard to see what benefits accrue from a short respite from an inevitable day of reckoning. There is no claim here that false statements were made in an effort to sell off shares held by management, or to delay a criminal prosecution. For related reasons, the Complaint fails to allege a sufficient opportunity to derive a benefit from the alleged misstatements and nondisclosures: the ordinary course of bank business would lead to the review of the loan portfolios, as it did. If motive could be pleaded by alleging the defendant's desire for continued employment, and opportunity by alleging the defendant's authority to speak for the company, the required showing of motive and opportunity would be no realistic check on aspersions of fraud, and mere misguided optimism would become actionable under the securities laws. While some fraud may go unpunished as a result of Rule 9(b)'s heightened pleading standard, we recently acknowledged that we cannot eliminate all opportunities for "unremedied fraud" without creating opportunities for "undeserved settlements." *See In re Time Warner,* 9 F.3d at 263–64.

Shields relies on *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989), to demonstrate that she has alleged a motive sufficient to raise a strong inference of fraud. However, Shields misreads that decision. In *Cosmas,* plaintiff alleged that Inflight Services' chief executive officer touted sales to the People's Republic of China as an important new source of revenue and predicted increasing sales and per share earnings for the coming year. However, prior to these announcements, the People's Republic of China had imposed import restrictions that made such predicted sales improbable. *Id.* at 10. As it happened, the sales did not occur. The holding of *Cosmas* is that these allegations support an inference of fraud by pleading adequate circumstantial evidence to indicate conscious misconduct by the defendants, *i.e.,* that defendants knew of the import restrictions at the time they made the allegedly fraudulent statements. *Id.* at 13. We went on, however, briefly to consider the plaintiff's allegations of motive and op-

portunity, a distinct and alternative method of pleading scienter under Rule 9(b). Shields directs us to the statement in *Cosmas* that a motive was established there by allegations "that the defendants owned shares of Inflight ... and that the allegedly fraudulent statements artificially inflated or maintained the prices of Inflight securities." *Cosmas* relies on the following language and analysis of *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985): "the ... implication of the Complaint is that the alleged failure to qualify the bullish statements was intended to permit individual defendants to profit from an inflated market price before the truth became known." Although the *Cosmas* opinion does not recite specific allegations of insider stock sales, the *Goldman* defendants sold tens of thousands of shares during the period that the allegedly defrauded customers were purchasing them. *Id.* at 1063. Absent some comparable allegation to explain how a defendant benefits from an inflated stock price, stock ownership does not provide sufficient motive to sustain the pleading burden under Rule 9(b). Here, Shields does not allege that defendants owned stock, but rather that defendants made fraudulent statements intending to inflate the stock price so that they "could protect their executive positions and the compensation and prestige they enjoy thereby." Following *Goldman,* we require of Shields more specific factual allegations before we will infer from defendants' positions as executives that incorrect predictions were made with fraudulent intent.

## C. *Additional issues.*

Shields claims that the district court committed legal error by relying upon *Steiner v. Shawmut National Corp.,* 766 F.Supp. 1236 (D.Conn.1991), *Salit v. Centerbank,* 767 F.Supp. 429 (D.Conn.1990), and *Haft v. Eastland Fin. Corp.,* 755 F.Supp. 1123 (D.R.I. 1991). She contends that these cases were overruled by the Supreme Court's decision in *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). The district court made no error in applying these cases. *Virginia Bankshares* held that a statement of reasons, opinion or belief can be a material fact if the person who makes the statement is reasonably pre-

sumed to have expertise, to have access to internal corporate information, and to owe an obligation to exercise judgment in the interest of the stockholders. A statement of reasons, opinion or belief by such a person when recommending a course of action to stockholders can be actionable under the securities laws if the speaker knows the statement to be false. *Id.* at ——, 111 S.Ct. at 2757–60. The defect in the pleading here is not that it alleges fraudulent misrepresentation of mere opinion or belief, but that it fails adequately to allege that the expression of the opinions and beliefs was fraudulent. *Virginia Bankshares* does not address the pleading requirements of Rule 9(b), and does not alter them. The district court in this case properly found that Shields's pleading failed to satisfy those requirements.

Shields also directs our attention to a recent case from the Ninth Circuit, *In re Wells Fargo Securities Litigation,* 12 F.3d 922 (9th Cir.1993), claiming that that case takes a less demanding view of the pleading requirements in securities fraud cases, and urging us to adopt the Ninth Circuit's approach. We decline the invitation, noting that *Wells Fargo* did not discuss the pleading requirements of Rule 9(b) (although the dissent by Judge Trott did). Moreover, there is some tension between *Wells Fargo* and another Ninth Circuit case, *In re Glenfed, Inc. Securities Litigation,* 11 F.3d 843 (9th Cir.1993), which the Ninth Circuit has recently undertaken to reconsider in banc. The issue in that case was whether Glenfed misrepresented its financial condition by concealing deficiencies in how it monitored the quality and value of its assets, understating reserves for loan losses, and failing to disclose that its plan to divest subsidiaries was not feasible in the prevailing market for such transactions. *Id.* at 846–47. *Glenfed* relies on several cases from this Circuit in concluding that the real question to consider in determining whether a plaintiff has met the scienter pleading requirement of Rule 9(b) "must be whether the facts in the amended complaint would give rise to an inference that the Defendants either did not believe the statements or knew that the statements were false." *Id.* at 849. In our view, the opinion

**1132**

in *Glenfed* and the dissent by Judge Trott in *Wells Fargo* are more consonant with case law in this Circuit. *See Luce v. Edelstein,* 802 F.2d 49, 57 (2d Cir.1986) (when amending their complaint to remedy deficiencies under Rule 9(b), plaintiffs "must allege particular facts demonstrating the knowledge of defendants at the time that such statements were false.").

 Shields further argues that, even if we decide that she has not met the requirements of Rule 9(b), we nevertheless must find that the district court abused its discretion in dismissing her claim without granting her leave to amend her complaint. We discern no abuse of discretion. Shields had already substantively amended her complaint once before. She did not ask the district court for leave to amend it further. Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought. *See Carl Sandburg Village Condominium Ass'n v. First Condominium Development Co.,* 758 F.2d 203, 206 n. 1 (7th Cir.1985); *cf. Luce v. Edelstein,* 802 F.2d 49, 56–57 (2d Cir.1986) (where plaintiff specifically sought leave to amend, dismissal without granting leave to amend was abuse of discretion). It is not clear that the failure of pleading could be remedied by further amendment, nor has Shields suggested how that could be done.

Finally, because we find that the primary violation asserted by Shields is not adequately pleaded and therefore properly dismissed by the district court, we also find no error in the district court's dismissal of the claims of secondary liability under § 20 of the 1934 Act against Taylor and Engelman, or in the district court's refusal to exercise jurisdiction over Shields's state law claim of negligent misrepresentation, in the absence of any remaining federal claim.

### CONCLUSION

For the reasons stated above, we affirm the district court's order dismissing Shields's claims under § 10(b) and Rule 10b–5 for failure to plead fraud with the particularity required by Rule 9(b). We also affirm the district court's dismissal of the claims of secondary liability under § 20, and of the claim of negligent misrepresentation under state law.